**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| **BONNIE BECKER DBA OMA'S SLICE OF HEAVEN**, on behalf of herself and all others similarly situated,<br>　　　　　　　　　　　Plaintiff,<br>v.<br><br>**FIRST SAVINGS BANK**,<br>　　　　　　　　　Defendant. | Case No.<br><br><br>**CLASS ACTION** |

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff Bonnie Becker dba Oma's Slice of Heaven ("Bonnie Becker"), by counsel, and for her Class Action Complaint against the Defendant, alleges as follows:

## INTRODUCTION AND SUMMARY OF THE ACTION

1.　　　This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant, First Savings Bank ("FSB"), arising from the improper assessment and collection of Overdraft Fees ("OD Fees"), which FSB charges when it pays certain checking account debits.

2.　　　Plaintiff Becker brings this action on behalf of herself and a class of all similarly situated consumers against FSB arising from the assessment of OD Fees on transactions that did not actually overdraw the account.

3.　　　The plain language of FSB's adhesion contracts specifically promises that FSB will only charge OD Fees on transactions when such transactions cause the account to have a negative balance.

4.　　　And yet, according to the monthly account statements prepared by FSB, Ms. Becker's account balance was not negative when she was charged OD Fees.  Thus, the transactions did not actually overdraw Ms. Becker's account and FSB charged her hefty OD Fees anyway.

5.      This practice works to catch accountholders in an increasingly devastating cycle of bank fees.

6.      Ms. Becker and other FSB customers have been injured by FSB's practices. On behalf of herself and the putative class, Ms. Becker seeks damages, restitution and injunctive relief for FSB's breach of contract and violation of consumer protection law.

## JURISDICTION

7.      This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims of the members of each of the putative classes exceeds $5 million, exclusive of interest and costs, because Ms. Becker brings this action on behalf of proposed classes that are each comprised of over one hundred members, and because at least one of the members of each of the proposed classes is a citizen of a different state than FSB.

8.      Venue and personal jurisdiction are proper in this district because a substantial part of the events giving rise to this action occurred in this District.

## CLASS ACTION ALLEGATIONS

9.      Ms. Becker brings this action on behalf of herself and all others similarly situated pursuant to Rule 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

10.     The proposed classes are defined as:

> All FSB checking account holders in the United States who, during the applicable statute of limitations, were charged OD Fees on transactions that did not overdraw their checking accounts (the "National Class").

> All FSB checking account holders in the state of New Mexico who, during the applicable statute of limitations, were charged OD Fees

on transactions that did not overdraw their checking accounts (the "New Mexico Subclass").

The classes are collectively referred to as the "Classes."

11.    Ms. Becker reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

12.    Excluded from the Classes are FSB, its parents, subsidiaries, affiliates, officers and directors, any entity in which FSB has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

13.    The members of the Classes are so numerous that joinder is impractical.  The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to FSB's records.

14.    The claims of Ms. Becker are typical of the claims of the Classes in that she, like all Class members, was charged improper OD Fees. Ms. Becker, like all Class members, has been damaged by FSB's misconduct in that she paid improper OD Fees.  Furthermore, the factual basis of FSB's misconduct is common to all Class members and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

15.    There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

16.    Among the questions of law and fact common to the Classes are whether FSB:

a.    Charged OD Fees on transactions when those transactions did not overdraw accounts;

b.    Breached its contract with consumers by charging OD Fees on transactions when those transactions did not overdraw accounts;

3

      c.      Breached the covenant of good faith and fair dealing by charging OD Fees on transactions when those transactions did not overdraw accounts;

      d.      Violated New Mexico consumer protection law by charging OD Fees on transactions when those transactions did not overdraw accounts;

      e.      Whether Ms. Becker and the Classes were damaged by Defendant's conduct and if so, the proper measure of damages.

17.     Ms. Becker is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Ms. Becker is an adequate representative and will fairly and adequately protect the interests of the Classes.

18.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of FSB, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and FSB's misconduct will proceed without remedy.  Moreover, given that the improper fees were assessed in a uniform manner, common issues predominate over any questions, to the extent there are any, over any questions affecting only individual members.

19.     Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might

otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

**PARTIES**

20.     Oma's Slice of Heaven is a sole proprietorship solely owned and operated by Bonnie Becker, a natural person who resides in Truth or Consequences, New Mexico. Ms. Becker has a checking account with FSB.

21.     Defendant FSB is a bank with over a billion dollars in assets. It is headquartered in Beresford, South Dakota and maintains branch locations in South Dakota, New Mexico, Nevada, Nebraska, Texas and Arizona.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

**A.      FSB Account Documents Promise That It Will Only Charge OD Fees on Transactions That Actually Overdraw an Account**

22.     Plaintiff's checking account with FSB was, at all relevant times, governed by FSB's standardized Account Agreement, the material terms of which are drafted by FSB, amended by FSB from time to time at its convenience and complete discretion, and imposed by FSB on all of its customers.

23.     In plain, clear, and simple language, the contract documents discussing OD Fees promise that FSB will only charge OD Fees on transactions when "there are insufficient funds available in your Account to cover a withdrawal or debit presented against your Account." Ex. A at 2. FSB's contract further clearly promises that OD Fees will be charged only on a "withdrawal created by check, in-person withdrawal, ATM withdrawal, or other electronic means that results in an overdraft, whether we pay the overdraft or not." *Id.*

24.    Further, in a form titled, "What You Need to Know about Overdrafts and Overdraft Fees," FSB explains: "An overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway."[1]

25.    Contrary to these promises, FSB's uniform policy and practice is to disregard the actual amount of money in the account or whether there is a negative balance and, instead, to assess OD Fees based on a manufactured balance that it does not disclose.

26.    By using this calculation—as opposed to the actual money in an accountholder's account—to determine whether to assess an OD Fee, FSB increases the number of OD Fees it assesses on its accountholders.

27.    This manufactured balance is not the official balance of the account and it is not the balance provided to accountholder's in their monthly statements from FSB.  As such, it is reasonable for Ms. Becker and accountholders like her to interpret and understand FSB's use of the term "balance" as the official balance in the account, *i.e.* the actual money in the account.  Ms. Becker and class members could not reasonably have expected that FSB would assess OD Fees in this manner.

**B.    Examples of FSB's Imposition of OD Fees on Ms. Becker**

28.    FSB charged Ms. Becker $35 OD Fees on transactions that did not overdraw her account.  For example, on September 16, 2019, Ms. Becker was assessed an OD Fee in the amount of $35 despite the fact that, according to the bank statement issued by FSB, her account never went negative and always had sufficient funds to cover the transaction.

---

[1] https://www.firstsavingsbanks.bank/opt-in-form.aspx

**C.      FSB Abuses Its Discretion**

29.      To the extent the account documents do not explicitly bar the polices described above, FSB exploits contractual discretion to the detriment of accountholders and breaches good faith and fair dealing when it uses these policies.

30.      It was bad faith and totally outside Plaintiff Becker's reasonable expectations for the bank to use its discretion to assess OD Fees for transactions that did not actually overdraw her account.

31.      Additionally, FSB grants itself discretion to charge—or not to charge—an OD Fee on a given transaction. When it charges an OD Fee on transactions that do not actually overdraw an account, FSB engages in bad faith and contradicts reasonable consumer expectations.

32.      FSB acted in bad faith and outside reasonable consumer expectations when it assessed OD Fees when there was enough money in accountholders' accounts to cover the transactions and by using a manufactured account calculation to increase the number of OD Fees it could assess.

**FIRST CLAIM FOR RELIEF**
**Violation of Electronic Fund Transfers Act (Regulation E)**
**C.F.R. § 1005 et seq. (authority derived from 15 U.S.C. § 1693 *et seq.*))**
**(On Behalf of Plaintiff and the Classes)**

33.      The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

34.      By charging overdraft fees on ATM and nonrecurring transactions, Defendant violated Regulation E (12 C.F.R. §§1005 et seq.), whose "primary objective" is "the protection of consumers" (§1005.l(b)) and which "carries out the purposes of the [Electronic Fund Transfer Act 15 U.S.C. §§1693 et seq.), the "EFTA"] (§1005. l(b)), whose express "primary objective" is also "the provision of individual consumer rights" (15 U.S.C. §1693(b)).

35.     Specifically, the charges violated what is known as the "Opt In Rule" of Regulation E (12 C.F.R. § 1005.17.) The Opt In Rule states: "a financial institution ... shall not assess a fee or charge ... pursuant to the institution's overdraft service, unless the institution: (i) [p]rovides the consumer with a notice in writing [the opt-in notice]. . . describing the institution's overdraft service" and (ii) "[p]rovides a reasonable opportunity for the consumer to affirmatively consent" to enter into the overdraft program. (Id.) The notice "shall be clear and readily understandable." (12 C.F.R. §205.4(a)(l).) To comply with the affirmative consent requirement, a financial institution must provide a segregated description of its overdraft practices that is accurate, non-misleading and truthful and that conforms to 12 C.F.R. § 1005.17 prior to the opt-in, and must provide its customers a reasonable opportunity to opt-in after receiving the description. The affirmative consent must be provided in a way mandated by 12 C.F.R. § 1005.17, and the financial institution must provide confirmation of the opt-in in a manner that conforms to 12 C.F.R. § 1005.17.

36.     The intent and purpose of this Opt-In Contract is to "assist customers in understanding how overdraft services provided by their institutions operate .... by explaining the institution's overdraft service ... in a clear and readily understandable way"-as stated in the Official Staff Commentary (74 Fed. Reg. 59033, 59035, 59037, 5940, 5948), which is "the CFPB's official interpretation of its own regulation," "warrants deference from the courts unless 'demonstrably irrational,'" and should therefore be treated as "a definitive interpretation" of Regulation E. *Strubel v. Capital One Bank* (*USA*), 2016 U.S. Dist. LEXIS 41487, *11 (S.D. N.Y. 2016) (quoting *Chase Bank USA v. McCoy*, 562 U.S. 195, 211 (2011)) (so holding for the CFPB's Official Staff Commentary for the Truth In Lending Act's Regulation Z)).

37.     Defendant has failed to comply with the 12 C.F.R. § 1005.17 opt-in requirements, including failing to provide its customers with a valid description of the overdraft program which meets the strictures of 12 C.F.R. § 1005.17. Defendant's opt-in method fails to satisfy 12 C.F.R. § 1005.17 because, *inter alia*, it states that an overdraft occurs when you do "not have enough money

in your account to cover a transaction but we pay it anyway," when in fact Defendant assesses overdraft fees when there is enough money in the account to pay for the transaction at issue.

38.     As exhibited by the transactions above, Plaintiff's account had funds to cover the transactions, which were paid, yet Defendant charged overdraft fees.

39.     As a result of violating Regulation E's prohibition against assessing overdraft fees on ATM and non-recurring debit card transactions without obtaining affirmative consent to do so, Defendant has harmed Plaintiff and the Class.

40.     Due to Defendant's violation of Regulation E (12 C.F.R. § 1005.17), Plaintiff and members of the Class are entitled to actual and statutory damages, as well as attorneys' fees and costs of suit pursuant to 15 U.S.C.A. § 1693m.

**THIRD CLAIM FOR RELIEF**
**Violation of the New Mexico Unfair Practices Act, NMSA 1978, § 57–12–2, *et seq*.**
**(On Behalf of the New Mexico Subclass)**

41.     . The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

42.     This claim is asserted by Plaintiff, individually and on behalf of the members of the Class under New Mexico Unfair Practices Act (NMUPA), NMSA 1978, § 57–12–2, *et seq*.

43.     FSB engaged in unfair and/or deceptive acts or practices relating to the imposition of overdraft fees on consumers, in violation of the NMUPA, NMSA 1978, § 57–12–2, *et seq*.

44.     The NMUPA, NMSA 1978, § 57–12–3 prohibits "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce."

45.     NMSA 1978, § 57–12–2(D) defines "unfair or deceptive trade practice" as "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services… that may, tends to or does deceive or mislead any person."

46.     Plaintiff and putative class members purchased services, in the form of banking services, from FSB that were used primarily for personal, family or household purposes.

47.     FSB engaged in unlawful conduct, made affirmative misrepresentations, or otherwise violated the NMUPA by knowingly and intentionally employing unfair and deceptive policies and practices of assessing OD Fees and misrepresenting and failing to disclose its policies and practices of assessing OD Fees.

48.     FSB also engaged in unlawful conduct in violation of the NMUPA by making knowing and intentional omissions. FSB knowingly failed to disclose its policies and practices of assessing OD Fees, when a transaction was authorized on a positive balance, in its account documents.

49.     FSB intended that Plaintiff and putative class members rely on the acts of concealment and omissions, so that Plaintiff and putative class members would continue to incur overdraft fees.

50.     FSB's conduct caused Plaintiff and putative class members to suffer ascertainable losses in the form of excessive overdraft fees that, but for FSB's unfair and deceptive practices and policies, would not otherwise have been imposed.

51.     A causal relationship exists between FSB's unlawful conduct and the ascertainable losses suffered by Plaintiffs and the Class. Had FSB not acted unlawfully, Plaintiff and putative class members would not have incurred excessive overdraft fees in violation of the NMUPA.

52.     As redress for FSB's repeated and ongoing violations of the NMUPA, Plaintiff and putative class members are entitled to, inter alia, damages and declaratory relief.

## FOURTH CLAIM FOR RELIEF
### Negligent Misrepresentation
### (On Behalf of the New Mexico Subclass)

53.     . The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

54.     FSB misrepresented and omitted and continue to misrepresent and omit material facts concerning the OD charges.

55.     FSB failed to inform customers that the that the overdraft charges were not merely assessed when actually overdrawn.

56.     FSB knowingly and intentionally misrepresented and failed to disclose its policies and practices of assessing overdraft fees.

57.     FSB also made knowing and intentional omissions by failing to disclose in its account documents its policies and practices of assessing overdraft fees when a transaction was authorized on a positive balance.

58.     At the time of making these false statements and omissions of material fact, FSB intended that plaintiff and class members act on the basis of these misrepresentations and omissions.

59.     At the time of making the misrepresentations and omissions detailed herein, FSB either knew, recklessly disregarded, had no reasonable grounds for believing and/or reasonably should have known that customers would be misled by the convoluted overdraft charges.

60.     Plaintiff and class members, without knowledge of the falsity of FSB's stated overdraft policies, and relying upon the conventional definition of an overdraft, acted in justifiable reliance upon the stated overdraft charge policies, which were inaccurate.

61.     Had plaintiff and class members known of the true material facts which FSB

concealed, misrepresented and omitted, they would not have accepted the account terms.

62.     FSB's deceit and misrepresentation continues to this day, despite widespread knowledge of its impropriety in bank circles.

## **PRAYER FOR RELIEF**

WHEREFORE, Ms. Becker and members of the Classes demand a jury trial on all claims so triable and judgment as follows:

44.     Declaring FSB's OD Fee policies and practices to be wrongful;

45.     Restitution of all OD Fees paid to FSB by Ms. Becker and the Classes on transactions that did not actually overdraw an account i.e. when there were sufficient actual funds in the account to cover the transactions;

46.     For each member of the Classes, actual damages in an amount according to proof;

47.     Statutory damages and punitive damages, to the extent permitted by applicable law;

48.     Pre-judgment interest at the maximum rate permitted by applicable law;

49.     Costs and disbursements assessed by Ms. Becker in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

50.     Such other relief as this Court deems just and proper.


Dated: January 14, 2019                     Respectfully submitted,
                                            ___/s/ Nicholas Koluncich_____
                                            **Nicholas Koluncich**
                                            Law Offices of Nicholas Koluncich III, LLC
                                            500 Marquette Ave NW – Suite 1200
                                            Albuquerque, NM 87102
                                            Telephone (505) 881-2228
                                            FAX (505) 881-4288

                                            **KALIEL PLLC**
                                            Jeffrey D. Kaliel (*pro hac vice* to be filed)
                                            Sophia G. Gold (*pro hac vice* to be filed)

1875 Connecticut Ave. NW 10th Floor
Washington, D.C.  20009
Telephone: (202) 350-4783
*jkaliel@kalielpllc.com*
*sgold@kalielpllc.com*